# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW WHITFIELD, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SIERRA ONCOLOGY, INC., ROBERT : <br> PELZER, GAURAV AGGARWAL, : <br> ANDREW ALLEN, MONA ASHIYA, : <br> CRAIG COLLARD, JEFFREY H. COOPER, : <br> STEPHEN G. DILLY, GEORGIA ERBEZ, : <br> CHRISTY OLIGER, and ANDREW : <br> SINCLAIR, : <br> : <br> Defendants. : | Case No. _____ <br><br> <u>JURY TRIAL DEMANDED</u> <br><br> **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On April 12, 2022, Sierra Oncology, Inc. ("Sierra" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by GlaxoSmithKline plc ("GSK") and Orkium Acquisition Inc. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Sierra's stockholders will receive $55.00 in cash per share.

3. On May 16, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Sierra common stock.

9. Defendant Sierra is a Delaware corporation. Sierra's common stock is traded on the NASDAQ under the ticker symbol "SRRA."

10. Defendant Stephen G. Dilly is President, Chief Executive Officer, and a member of the Board of Directors of Sierra (the "Board").

11. Defendant Robert Pelzer is a director of the Company.

12. Defendant Gaurav Aggarwal is a member of the Board.

13. Defendant Andrew Allen is a member of the Board.

14. Defendant Mona Ashiya is a member of the Board.

15. Defendant Craig Collard is a member of the Board.

16. Defendant Jeffrey H. Cooper is a member of the Board.

17. Defendant Georgia Erbez is a member of the Board.

18. Defendant Christy Oliger is a member of the Board.

19. Defendant Andrew Sinclair is a member of the Board.

20. Defendants identified in ¶¶ 10-19 are referred to herein as the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

21. Sierra is a late-stage biopharmaceutical company based in San Mateo, California, delivering targeted therapies that treat rare forms of cancer.

22. On April 12, 2022, Sierra entered into the Merger Agreement.

23. The press release announcing the Proposed Merger provides as follows:

GlaxoSmithKline plc (LSE/NYSE: GSK) and Sierra Oncology, Inc (Nasdaq: SRRA) today announced that the companies have entered into an agreement under which GSK will acquire Sierra Oncology, a California-based, late-stage biopharmaceutical company focused on targeted therapies for the treatment of rare forms of cancer, for $55 per share of common stock in cash representing an approximate total equity value of $1.9 billion (£1.5 billion).

Myelofibrosis is a fatal cancer of the bone marrow impacting the normal production of blood cells. Anaemia represents a high unmet medical need in patients with myelofibrosis. At diagnosis, approximately 40% of patients are already anaemic, and it is estimated that nearly all patients will eventually develop anaemia.[1,2] Patients treated with the most commonly used JAK inhibitor will often require transfusions, and more than 30% will discontinue treatment due to anaemia.[3] Anaemia and transfusion dependence are strongly correlated with poor prognosis and decreased overall survival.

Momelotinib has a differentiated mode of action with inhibitory activity along key signalling pathways. This activity may lead to beneficial treatment effects on anaemia and reduce the need for transfusions while also treating symptoms. In January 2022, Sierra Oncology announced positive topline results from the MOMENTUM phase III trial. The study met all its primary and key secondary endpoints, demonstrating that momelotinib achieved a statistically significant and clinically meaningful benefit on symptoms, splenic response, and anaemia.

**Luke Miels, Chief Commercial Officer, GSK** said: "Sierra Oncology complements our commercial and medical expertise in haematology. Momelotinib

3

offers a differentiated treatment option that could address the significant unmet medical needs of myelofibrosis patients with anaemia, the major reason patients discontinue treatment. With this proposed acquisition, we have the opportunity to potentially bring meaningful new benefits to patients and further strengthen our portfolio of specialty medicines."

**Stephen Dilly, MBBS, PhD, President and Chief Executive Officer, Sierra Oncology** said: "Uniting with GSK creates the best opportunity for Sierra Oncology to realise its mission of delivering targeted therapies that treat rare forms of cancer while also delivering compelling and certain value for our stockholders. Now we have a partner with a global infrastructure and oncology expertise that enables us to deliver momelotinib to patients as quickly as possible and on a global scale."

Momelotinib complements GSK's *Blenrep* (belantamab mafodotin), building on GSK's commercial and medical expertise in haematology. The proposed acquisition aligns with GSK's strategy of building a strong portfolio of new specialty medicines and vaccines. If the transaction is completed and momelotinib is approved by regulatory authorities, GSK expects momelotinib will contribute to GSK's growing specialty medicines business, with sales expected to begin in 2023, with significant growth potential and a positive benefit to the Group's adjusted operating margin in the medium term.

**Financial considerations**

Under the terms of the agreement, the acquisition will be effected through a one-step merger in which the shares of Sierra Oncology outstanding will be cancelled and converted into the right to receive $55 per share in cash. Subject to customary conditions, including the approval of the merger by at least a majority of the issued and outstanding shares of Sierra Oncology, and the expiration or earlier termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, the transaction is expected to close in the third quarter of 2022 or before.

The per share price represents a premium of approximately 39 per cent to Sierra Oncology's closing stock price on 12 April 2022 and a premium of approximately 63 per cent to Sierra's volume-weighted average price (VWAP) over the last 30 trading days. Sierra Oncology's Board of Directors has unanimously recommended that Sierra's stockholders vote in favour of the approval of the merger. Additionally, stockholders of Sierra Oncology holding approximately 28 per cent of Sierra's outstanding shares, have agreed to vote their shares in favour of approval of the merger.

GSK will account for the transaction as a business combination and expects it to be accretive to adjusted EPS in 2024, the expected first full year of momelotinib's sales. New GSK reaffirms its full-year 2022 guidance, the medium-term outlook for 2021-2026 of more than 5% sales and 10% adjusted operating profit CAGR* at CER**, and long-term sales ambition.

The value of the gross assets of Sierra Oncology to be acquired (as of 31 December 2021) is $109 million (£83 million at the rate of £1 = $1.312, being the 31 March 2022 spot rate). The net losses of the business were $95 million for the 12 months ended 31 December 2021 (£70 million, at the rate of £1 = $1.38, being the average rate for the period).

\*     CAGR: Compound Annual Growth Rate; \*\*CER: Constant Exchange Rate

**Advisors**

PJT Partners is acting as financial advisor and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to GSK in connection with the transaction. Lazard is acting as financial advisor and Wilson Sonsini Goodrich & Rosati, is serving as legal counsel to Sierra Oncology.

24. On May 16, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

## Financial Projections

25. The Proxy fails to disclose material information regarding Sierra's financial projections, specifically: the line items underlying the financial projections.

26. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

## Financial Analyses

27. The Proxy fails to disclose material information regarding the financial analyses conducted by Lazard. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

28. Regarding Lazard's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by Lazard; (ii) the inputs and assumptions underlying the discount

rates and terminal growth rates utilized by Lazard; (iii) the net cash utilized by Lazard; and (iv) the fully diluted shares utilized by Lazard.

29. Regarding Lazard's Selected Public Companies Analysis, the Proxy fails to disclose the individual multiples and metrics for the companies utilized by Lazard.

30. Regarding Lazard's Selected Precedent Transactions Analysis, the Proxy fails to disclose the individual multiples and metrics for the transactions utilized by Lazard.

31. Regarding Lazard's Premia Paid Analysis, the Proxy fails to disclose: (i) the transactions utilized by Lazard; and (ii) the premiums paid in the transactions utilized by Lazard.

32. Regarding Lazard's Research Analyst Price Targets analysis, the Proxy fails to disclose: (i) the price targets utilized by Lazard; and (ii) the sources of the price targets.

**COUNT I**

**Claim Against the Individual Defendants and Sierra for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

33. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

35. Sierra is liable as the issuer of these statements.

36. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

37. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

39. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

40. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

41. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

42. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

43. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Sierra within the meaning of Section 20(a) of the Exchange Act as alleged herein.

45. Due to their positions as officers and/or directors of Sierra and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

48. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

49. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

51. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

52. Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: May 18, 2022

**GRABAR LAW OFFICE**

By: *[signature]*
Joshua H. Grabar (#5906953)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*